United States Court of Appeals,

Fifth Circuit.

No. 91–1669.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff–Appellee,

v.

Jerry D. WHEAT, et al., Defendants,

Ben D. Sudderth, Defendant–Appellant.

Sept. 2, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before BROWN, GARWOOD, and EMILIO M. GARZA, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case involves a bank director sued by the FDIC/Corporate[1] for negligence, breach of fiduciary duty, and breach of contract. After a jury verdict against Appellant on one loan, and the district court's subsequent denial of his motions for new trial and judgment notwithstanding the verdict, the bank director appeals to this court.

Alleging the statute of limitations expired before the FDIC filed suit, and the absence of any duty to the bank at the time the loan was made, Appellant seeks reversal of the jury verdict with a judgment that the FDIC take nothing. In the alternative, Appellant seeks reversal and remand for new trial. We disagree and affirm the judgment entered on the jury verdict.

The "Loan" Arranger

In 1980, Sudderth opened the Early Bank, a state chartered financial institution, in Early, Texas. Sudderth was the Chairman of the Board of Directors and majority stockholder until

---

[1]This is the FDIC acting in its corporate capacity. The FDIC may act in two capacities; it may act as a receiver or as an insurance corporation. *See infra* note 5. When acting in its receivership capacity, we shall refer to it as "FDIC/Receiver."

November 20, 1984. Early on, the bank experienced loan problems. Periodic FDIC and state inspections found numerous violations in loan procedures and banking regulations.

On June 21, 1984 Sudderth entered negotiations with George Day to sell the bank. Eight days later, Early Bank made a personal, unsecured loan of $125,000 to Day ("Day loan"). Day subsequently bought United Travelers Insurance Company.[2]

On November 16, 1984 Day sent the president of United Travelers, Jack Pike, to Early Bank to sign for a loan to United Travelers for $126,753.41 ("UT loan"). Pike did not sign that day, but, after speaking with Day and compiling financial statements on himself and United Travelers, Pike signed on November 20.[3] Although someone at UT then received the money for the loan, it was not Pike. Pike testified he only saw the cashier's check once, in the bank's loan file, and never saw the check or its proceeds again.[4] Pike also testified he never met or saw Sudderth on his visits to the bank.

Early Resignation; Early Demise

According to Sudderth, the sale of Early Bank should have closed on November 16, with all existing directors resigning that same day. Day called and requested the closing be postponed until

_____

[2]Early Bank secured the Day loan on the basis of Day's financial statement for the express purpose of purchasing Bowen Insurance Company. This loan became due, in full, 25 days later in the amount of $126,369, but Day did not satisfy the loan then. The record does not reflect whether Bowen Insurance Company subsequently became United Travelers Insurance Company, which Day bought sometime between June and November, 1984.

[3]Sole collateral for the UT loan was the personal guarantee of Pike, whose net worth equaled $10,100. Although UT's name was on the note, the loan worksheet and the signed loan papers expressly state collateral as the "[f]inancial statement and personal endorsement of Jack Pike." In addition, the terms of the note explicitly reveal UT's financial strength was *not* security for the loan.

[4]Pike testified at trial that Day made arrangements for the UT loan in August. The bank's cashier check for the UT loan was dated November 15, the promissory note for the loan was dated November 16, and Pike signed the note on November 20. The Bank ran the cashier check through the bank's ledger and proof machine on November 21, but UT did not cash the check until December 17, 1984.

November 20th; Sudderth contends he complied and resigned effective on the 20th. Sudderth claims Day called again, asking if the old board could reconvene, elect new board members nominated by Day (as new owner), and then resign again. This, Sudderth claims, he did, resigning again on November 26.

The decline of the bank continued under Day's leadership as well. In October, 1985 the Texas Banking Commission appointed the FDIC as receiver for Early Bank. On October 18, 1985 the FDIC/Receiver assigned all assets of Early Bank to the FDIC/Corporate.[5] Bad loan practices, a malady common to financial institutions in the 1980's, precipitated Early Bank's insolvency.

On July 15, 1988, the FDIC/Corporate brought suit in the district court for the Northern District of Texas. FDIC's claims against Sudderth were for damages on eleven loan transactions proximately caused by Sudderth's negligence, breach of contract, and breach of fiduciary duty.[6] After lengthy and extensive discovery, the FDIC put Sudderth to trial for alleged losses on three loans. Sudderth filed a motion in limine to prevent admission of any evidence or testimony about the bank's insolvency. Judge Woodward denied this motion. The jury returned a verdict for the FDIC on the UT loan, and the court entered the jury's judgment for $211,466.50. The court subsequently denied Sudderth's motions for new trial and JNOV. Sudderth then filed a timely appeal to us.

---

[5]The FDIC/Receiver has all rights and duties as any other receiver would in accordance with the laws of the state where the insolvent bank is organized. When the FDIC/Receiver assigns rights, title, and interest in the assets of the failed institution to the FDIC/Corporate, then the rights and obligations of the FDIC/Corporate are determined by applicable federal law. 12 U.S.C.A. §§ 1811–1823 (West 1989); *FDIC v. Sumner Fin. Corp.,* 602 F.2d 670, 679 (5th Cir.1979). *See also, Vernon v. RTC,* 907 F.2d 1101, 1106 (11th Cir.1990) (FDIC/Corporate has complete defense against state claims); *FDIC v. Lauterbach,* 626 F.2d 1327, 1330 n. 4 (7th Cir.1980) (FDIC, as two separate entities, may deal with itself); *FDIC v. Design and Dev., Inc.,* 73 F.R.D. 442, 443 (E.D.Wis.1977) (same).

[6]The FDIC also brought suit against Jerry Wheat, president of Early Bank from September 1980 until November 1984. The FDIC joined its case against Wheat with Sudderth's for the sake of judicial efficiency. One day prior to trial, however, Wheat filed for bankruptcy which placed a stay on the proceedings. District Judge Woodward ordered Wheat's case administratively closed, and allowed the FDIC to continue prosecution against Sudderth. Wheat and the FDIC subsequently settled all claims, with bankruptcy court approval.

Late Claim?

Sudderth argues the statute of limitations expired before the FDIC brought suit. He asserts that a breach of fiduciary duty claim arises in tort, accruing on the day the loan is made. Therefore, Sudderth contends the cause arose in November, 1984, with a limitation period of three years; the general limitation for tort claims when the United States is a party. 28 U.S.C.A. § 2415(b) (West Supp.1992).[7]

Section 2415 is subject to section 2416, which states:

> For the purpose of computing the limitations periods established in section 2415, there shall be *excluded* all periods during which— ...
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances....

28 U.S.C.A. § 2416(c) (West 1978) (emphasis added).

The plain language of section 2416 leads us to conclude the limitations period could not begin until the FDIC had constructive knowledge of the cause of action. Since Early Bank made the UT loan in November 1984, between FDIC and state inspections (September 1984) and receivership in October 1985, neither the FDIC nor the State could reasonably have known about this loan until October 1985. We conclude, therefore, that the statute of limitations began to run when the FDIC was appointed receiver, in October, 1985. *See, e.g., FDIC v. Former Officers & Directors of Metro. Bank,* 884 F.2d 1304, 1307–09 (9th Cir.1989) (interpreting the statute of limitations in favor of the government), *cert. denied, sub nom. Lee v. FDIC,* 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990); *FDIC v. Hinkson,* 848 F.2d 432, 435 (3d Cir.1988) (interpreting congressional intent to toll

---

[7]When the FDIC took over Early Bank, the bank's claim against Sudderth was *not* barred by the two year *state* statute of limitations. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). Since the state limitation had not expired, the claims then became governed by 28 U.S.C. §§ 2415–16. Had the state limitations period expired, then the FDIC would have no rights against Sudderth. *United States v. Sellers,* 487 F.2d 1268, 1269 (5th Cir.1973).

the statute of limitations until the FDIC has constructive knowledge); *FDIC v. Cardona,* 723 F.2d 132, 134 (1st Cir.1983) (same).

Since the FDIC commenced the action in July of 1988, the claim was not barred, as a tort or contract claim.  Therefore, the lengthy discussions by both parties in their briefs characterizing the claim as tort or contract is essent ially a moot point;  the claim is neither barred by the three year statute for tort, nor by the six year statute for contract actions.  28 U.S.C.A. § 2415(a) (West Supp.1992).

Duty

Sudderth contends the district court erred by implying Sudderth held a legal duty;  therefore, special issues for the jury regarding negligence, breach of fiduciary duty, and breach of contract were in error.  He claims no duty existed because no evidence supported Sudderth's alleged knowledge of the loan, and, in addition, Sudderth no longer served as director of the bank when the loan cleared.[8]

The director's dut y to the bank has both statutory and common law origins.  The Texas Banking Code of 1943 states "[p]rior to taking office each director ... shall take an oath that ... he will not violate ... the laws of the State of Texas in the conduct of the business of the bank;  and that he will diligently perform his *duties* as director."  Tex.Rev.Ci v.Stat.Ann. art. 342–407 (Vernon

---

[8]The contention that Sudderth's resignation absolves him of liability is without merit.  Congress expressly dealt with this issue in section 905(d) of FIRREA, which states in relevant part:

> The resignation ... of an institution-affiliated party ... shall not affect the jurisdiction and authority of the Corporation to ... proceed under this section against any such party, if such notice is served before the end of the 6–year period beginning on the date such party ceased to be such a party with respect to such nonmember bank ... (*whether such date occurs before, on, or after the date of the enactment of this paragraph* ).

FIRREA, Pub.L. No. 101–73, § 905(d), 103 Stat. 460 (codified as amended in 12 U.S.C.A. § 1828(j) (West 1989)) (emphasis added).

Supp.1992) (emphasis added).[9] Specifically, a director's duties include the obligation to "review and approve or disapprove *each loan and investment made.*" Tex.Rev.Civ.Stat.Ann. art. 342–409 (Vernon Supp.1992) (emphasis added).

As to the common law existence of the director's duty to the bank, witness the eloquent statement of over a century ago:

> Directors of banking corporations occupy one of the most important and responsible of all business relations to the general public. By accepting the position, and holding themselves out to the public as such, they assume that they will supervise and give direction to the affairs of the corporation, and impliedly contract with those who deal with it that its affairs shall be conducted with prudence and good faith. They have important duties to perform towards its creditors, customers, and stockholders, all of whom have the right to expect that these duties will be performed with diligence and fidelity, and that the capital of the corporation will thus be protected against misappropriation and diversion from the legitimate purposes of the corporation.

*Seale v. Baker,* 70 Tex. 283, 289, 7 S.W. 742, 744 (1888).[10]

Such a duty exists, however, only if Sudderth knew or should have known about the loan. *Lyman v. Bank of the United States,* 53 U.S. (12 How.) 225, 243, 13 L.Ed. 965, 973 (1851); *Hoye,* 795 F.2d at 896; *Seale,* 70 Tex. at 290, 7 S.W. at 745. The record reflects Sudderth wrote the loan procedures and guidelines for Early Bank.[11] The record further reveals the UT loan's express terms

---

[9]The oath taken by Sudderth and the other directors states in relevant part: "[W]e will ... diligently and honestly administer the affairs of said Bank; and ... will not violate [or] knowingly permit any officer, director, or employee of the bank to violate any of the provisions of the statutes of the State of Texas."

[10]The existence of any corporate director's civil duty to the corporation is well settled. *See, e.g., Briggs v. Spaulding,* 141 U.S. 132, 146, 11 S.Ct. 924, 929, 35 L.Ed. 662, 669 (1891) (director is responsible for losses resulting from his own neglect of duty); *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 353 (5th Cir.1989) (director's resignation does not absolve him from liability for a breach of duty); *Hoye v. Meek,* 795 F.2d 893, 895 (10th Cir.1986) (director's common law duty is codified in Oklahoma statute); *Gearhart Indus. v. Smith Int'l, Inc.,* 741 F.2d 707, 719 (5th Cir.1984) (director has duties of obedience, loyalty and due care); 3 Fletcher's Cyclopedia of Corp. § 838 (1986); 9 C.J.S. § 120(c) (1938).

[11]A memorandum written by Sudderth to his loan officers stated in part: "There will be no more unsecured loans made by this bank without *written approval from Ben D. Sudderth, Chairman of the Board.*" (emphasis added). In addition, Early Bank's loan guidebook under

did not comply with those instructions. *See supra* note 3. He also presided over the loan committee when the loan was made. Furthermore, Sudderth wrote the FDIC inspectors in October, 1984 that "every loan (regardless of size) [must] be approved by the loan committee," with "[myself] ... attending all loan committee meetings." Additionally, the bank cashier testified that she provided *daily* loan information to Sudderth. These facts are sufficient for us to hold that Sudderth had a fiduciary duty when the loan was made, as a matter of law. *Fuqua v. Taylor,* 683 S.W.2d 735, 737 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

Breach of that duty depends on the circumstances of the case, and so becomes a question of fact. *Fuqua,* 683 S.W.2d at 737; *Jewett v. Capitol Nat'l Bank,* 618 S.W.2d 109, 112 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). Early Bank loaned $126,753.41 to a borrower with $10,100 worth of assets. The note plainly designates Pike's personal guarantee as sole collateral. The FDIC need only rely on this documentation; therefore, the jury could reasonably infer the UT loan was inadequately secured, and thus imprudent. The jury also could reasonably conclude a director allowing this to happen breached his/her duty to the bank.

So far, we have established Sudderth had a statutory and common law duty when the loan check was drawn. Since the jury could reasonably construe the loan as imprudent, the jury could find Sudderth breached his duty. Therefore, with the jury findings, what is Sudderth's liability, if any, to the FDIC?

Like its treatment of a bank director's duty, the Texas Banking Code of 1943 also stipulates "directors ... of state banks shall be *liable* for financial losses sustained ... to the extent that directors ... of other corporations are now respo nsible for such losses in equity and common law." Tex.Rev.Civ.Stat.Ann. art. 342–410 (Vernon Supp.1992) (emphasis added). Based on this statute

---

"Minimum Requirements for Loans," (written by Sudderth) states: "If the applicant cannot properly secure the loan then, ... the loan should not be made."

which expressly incorporates the common law, what does Texas common law reflect regarding liability of a corporate director for breach of duty to the corporation itself?

Almost as equally well established as the director's duty to the bank is the personal liability of a director to the non-banking corporation. While some courts view a director as an agent for the corporation, and others view the director as a trustee of the corporation's assets, all agree the director's personal liability lies only to the entity that he or she represents, and not to individual shareholders or creditors of the corporation. *Briggs,* 141 U.S. at 146, 11 S.Ct. at 929, 35 L.Ed. at 668; *International Bankers Life Ins. v. Holloway,* 368 S.W.2d 567, 576 (Tex.1963); *Poe v. Hutchins,* 737 S.W.2d 574, 584 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Conrick v. Houston Civic Opera Ass'n,* 99 S.W.2d 382, 384 (Tex.Civ.App.—Amarillo 1936, no writ).

Here, when the FDIC operated as receiver, it stepped "into the shoes" of the bank. *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir.1971); *Freeling v. Sebring,* 296 F.2d 244, 245 (10th Cir.1961); *Owen v. RTC,* 766 F.Supp. 1163, 1165 (S.D.Fla.1991); *In re Hescon Dev., Inc.,* 91 B.R. 916, 919 (S.D.Cal.1988); *DeLorenzo v. FDIC,* 259 F.Supp. 193, 197 (S.D.N.Y.1966); *McWhirter v. First State Bank,* 182 S.W. 682, 683 (Tex.Civ.App.—Amarillo 1916, writ ref'd). The FDIC/Receiver then assigned all rights, title, interest and "chose in action ... against directors" to the FDIC/Corporate. This assignment gives the FDIC/Corporate the right to enforce claims for civil liability against Sudderth, as the bank corporation itself.[12]

In sum, we find the legal existence of Sudderth's duty to Early Bank. We find substantial evidence to uphold the jury findings of fact regarding breach of that duty. We, therefore, conclude Sudderth is liable for that breach as a matter of law.

---

[12]The FDIC asserted alternate theories of recovery: negligence, breach of fiduciary duty, and breach of contract. The jury found for the FDIC under all three theories. We do not expressly decide on the contract issue, and base this holding on the breach of statutorily mandated fiduciary duty as a tort action in negligence.

Jury Charges

Sudderth contends the jury charges were flawed. Specifically, he contends special issues regarding duty should have been excluded, and a special issue on his business judgment defense should have been given instead.

Great latitude is shown the trial court regarding jury instructions. Appellate review looks to whether the instruction accurately states the law, and does not mislead the jury. *Bommarito v. Penrod Drilling,* 929 F.2d 186, 189 (5th Cir.1991). Reversal of instructions, as a whole, is called for if we are left with substantial doubts as to whether the jury received proper guidance. *Turnage v. General Elec.,* 953 F.2d 206, 212 (5th Cir.1992). As discussed earlier, Sudderth had a duty to his bank. Our review of the jury instructions found them lucid and accurate on the duty question, and at the same time they contained Sudderth's defense of the business judgment rule and its effect on the FDIC's case.[13] Viewed in its entirety, the jury charge accurately and completely stated the law. We

---

[13]The jury instructions on fiduciary duty and the business judgment rule were given as follows:

### BREACH OF FIDUCIARY DUTY

Directors and officers of a bank owe a fiduciary duty to the bank, its shareholders, depositors, and creditors. As fiduciaries, directors and officers have a duty to act with the highest degree of loyalty, trust, and allegiance toward the bank, and with the utmost candor, unselfishness and good faith. Directors and officers of a bank are held to a higher standard of fair-dealing than a person not in a fiduciary position because they are responsible for other people's money.

A breach of fiduciary duty consists of any failure of a director or officer to comply with such standards.

A director or officer of a bank shall not be held liable if his conduct falls within the business judgment rule, as defined in these instructions.

### BUSINESS JUDGMENT RULE

You are instructed that a director or officer of a bank shall not be liable for claims against him if, in the discharge of his duties, he exercised ordinary care and acted in good faith and honestly exercised his best business judgment within the limits of the actual authority of his position with the bank.

A director or officer of a bank shall not be held liable for honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose.

find no reversible error regarding jury instructions on Sudderth's duty. *Turnage,* 953 F.2d at 212; *Bradshaw v. Freightliner Corp.,* 937 F.2d 197, 200 (5th Cir.1991).

We also find no error in the trial judge's denial of Appellant's motions for JNOV and new trial. Viewing all documentation and testimony in a light most favorable to the FDIC, the evidence affords substantial support for a verdict in the FDIC's favor. *National Car Rental Sys., Inc. v. Better Monkey Grip Co.,* 511 F.2d 724, 730 (5th Cir.1975), *cert. denied,* 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975), *and* 423 U.S. 986, 96 S.Ct. 394, 46 L.Ed.2d 303 (1975). As such, the motions were correctly denied on the grounds of the existence of Sudderth's duty. *Mitchell v. Lone Star Ammunition,* 913 F.2d 242, 250 (5th Cir.1990); *Reimer v. Short,* 578 F.2d 621, 628 (5th Cir.1978).

In Limine

We likewise uphold the lower court's ruling on Sudderth's motion in limine. Sudderth sought to prevent the FDIC's introduction of evidence reflecting directly or indirectly on the bank's insolvency. Again, appellate courts confer great deference on the trial court's rulings on such motions. *United States v. Burton,* 737 F.2d 439, 443 (5th Cir.1984). The burden is upon Sudderth to show reason why the evidence should be excluded. Since the FDIC would not have been brought into the case were the bank not insolvent, we fail to see how evidence of the bank's financial condition could be kept from the jury. The trial court must weigh the evidence's contribution to the case

---

The special issues given to the jury included:

> Do you find from a preponderance of the evidence that Ben D. Sudderth breached his fiduciary duty to the Bank with regard to [the UT loan]? Answer: Yes

> Do you find that the breach of fiduciary duty (or duties) was a proximate cause of the actual loss, if any, to the FDIC in connection with [the UT loan]? Answer: Yes

> What sum of money, if any, if paid now in cash would compensate for the actual damages, if any, caused to the FDIC as a result of the action of Ben D. Sudderth?

> Answer: $211,466.50

against any potential prejudice or confusion. This balance struck by the trial court will not be overturned absent abuse of discretion. *Burton,* 737 F.2d at 443. We find none here.

We also fail to find abuse of discretion in the trial judge's admitting into evidence copies of the Day loan documents. Sudderth contends that admitting the copies, and not the originals, into evidence created prejudice in the minds of the jurors.

When the FDIC closed Early Bank, they could not find the original documents of the Day loan. However, the bank's cashier testified at trial that she made the evidentiary copy from the bank's microfiche files.[14] The court then admitted the copy, without any objection from Sudderth. In fact, the FDIC offered Sudderth an opportunity to view the original microfilm both before and during trial, but Sudderth declined to do so.

Neither party asserts Day used the UT loan for anything other than to satisfy his earlier loan. Evidence of the Day loan merely corroborates what is already undisputed. Whether the jury draws conclusions from the proximity of the Day loan and the agreement between Sudderth and Day to sell the bank is the jury's own prerogative. They already know of the Day loan's existence, so it was not an abuse of discretion to permit admission of the corroborative evidence.

Since it was part of the transaction which occurred, the evidence of the Day loan is sufficiently relevant to us, despite Sudderth's allegations to the contrary. The FDIC does not seek to impose liability for the Day loan on Sudderth (it is paid off). However, when combined with facts surrounding the sale of the bank and the easy approval of the UT loan, the evidence of the Day loan permitted the jury to conclude that Sudderth may not have held the bank's interests as the highest priority, as was his duty. We hold, regarding this evidence, that the lower court did not abuse its

---

[14]Early Bank's standard documentation procedure included a process where they microfilmed all loan documentation the day a loan was made.

discretion in the evidentiary rulings.

## Mitigation

Sudderth contends the lower court erroneously failed to submit a jury instruction or special issue on the FDIC's requirement to mitigate damages. He asserts the FDIC should have gone after the $300,000 in cash reserves held by UT, as collateral for the loan. After all, an injured party claiming damages resulting from the wrongful acts of another must take reasonable advantage of opportunities to reduce or minimize losses. *Gladden v. Roach,* 864 F.2d 1196, 1200 (5th Cir.1989). As we stated earlier, however, UT's financial status was not collateral for the loan. The loan expressly stated Pike's financial statement and personal guarantee as *sole* collateral for the UT loan. Based on the terms of the loan agreement, the FDIC could not assert an action against UT's assets.

The FDIC, in fact, attempted to reduce its damages from the UT loan by taking legal action against Pike. Pike declared personal bankruptcy as a result. The FDIC has no legal claim against United Travelers, despite Sudderth's claims to the contrary, and so has mitigated to the full extent legally possible. No jury instruction or special issue was required on mitigation, since the FDIC had already exercised mitigation attempts.

## Conclusion

The FDIC faces a massive effort to control losses stemming from the excesses of the 1980's. Most of this hemorrhaging resulted from bad real estate loans and unscrupulous deals made by bankers. We see no need to rule more specifically on the ethics of the Appellant. The jury has already done so. So long as the trial courts apply the law justly, as they have done here, and the jury sifts through the facts in a reasonable manner appropriate to their mandate, as they did here, courts shall give full support to the FDIC's enforcement of the banking laws found throughout this country. We, therefore, affirm the rulings of the district court and the jury verdict.