**RESOLUTION TRUST CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**S. Don NORRIS, et al., Defendants.**

**Civ. A. No. H-92-748.**

United States District Court, S.D. Texas, Houston Division.

March 2, 1993.

---

Alton J. Hall, Jr., Wickliff & Hall, Houston, TX, for plaintiff.

Lloyd Reid Cunningham, Cunningham & Amann, Houston, TX, for defendants S. Don Norris and John J. Eikenburg.

Robin C. Gibbs, Gibbs & Ratliff, Houston, TX, for defendants George G. Harris, Sr., Edgar A. Smith, Howard T. Tellepsen, Jr., Lee Hogan, Larry NMI Street, Harry Glauser and Weldon NMI Smith.

David T. Hedges, Jr., Vinson & Elkins, Houston, TX, for defendants Joe Lynch and the Estate of William E. Daniels.

Gary Edwin Parks, Atty. at Law, Houston, TX, for defendant Abe Dunn.

James C. Slaughter, Fulbright & Jaworski, Houston, TX, for defendant Ernest L. Wehner, Estate of Ernest L. Wehner.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

The Resolution Trust Corporation, in its Corporate Capacity, ("RTC"), sued the former outside directors of Commonwealth Savings Association ("Commonwealth"). After the outside directors filed motions to dismiss under Fed.R.Civ.P. 12(b)(6), the RTC amended its complaint. The outside directors now renew their motion to dismiss (Docket Entries Nos. 42 and 46), and ask the court to hold that the amended complaint fails to state a claim as a matter of law.

### 1. Background

The RTC's Original Complaint alleged that real estate loans made from 1983 to 1985 have resulted in over $200 million in losses to the thrift. The RTC sued the outside directors to recover these losses, alleging a breach of the duty of due care, negligence, gross negligence, and negligence *per se*. In its amended complaints, the RTC challenges three additional specific loans and alleges the following counts:

1). *Ultra vires* acts;
2). Breach of the fiduciary duty of loyalty;
3). Gross negligence under federal and state common law;
4). Gross negligence under 12 U.S.C. sec. 1821(k);
5). Negligence under state and federal common law;
6). Negligence *per se* ;
7). Breach of contract; and
8). Breach of a controlling shareholder's fiduciary duty.

The outside directors assert that the Texas business judgment rule permits only claims for fraud or *ultra vires* conduct. The directors claim that the allegations of *ultra vires* acts in this case merely attempt to recast negligence claims to evade the business judgment rule. The RTC claims that

the business judgment rule has been limited by the Fifth Circuit holding in *FDIC v. Wheat,* 970 F.2d 124 (5th Cir.1992), and, alternatively, that the allegations of *ultra vires* acts satisfy the rule.

 In reviewing a motion to dismiss, the court must take the plaintiff's allegations as true, view them in a light most favorable to plaintiff, and draw all inferences in favor of plaintiff. *Griffith v. Johnston,* 899 F.2d 1427, 1432–33 (5th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). The motion must be denied unless the court finds that the plaintiff cannot prove any set of facts to support its claims for relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### 2. Count One: The Business Judgment Rule and *Ultra Vires* Acts

The Fifth Circuit stated the business judgment rule in Texas in *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707 (5th Cir.1984), as follows:

> Texas courts to this day will not impose liability upon a non-interested corporate director unless the challenged transaction is *ultra vires* or tainted by fraud ... Such is the business judgment rule in Texas.

*Id.* at 721. While the RTC challenges the continued viability of the business judgment rule, discussed below, it claims that it has adequately pled *ultra vires* acts to withstand a motion to dismiss.

Except for an allegation of "director entrenchment" discussed below, the RTC does not assert that the outside directors had a personal interest in the challenged loans or that the directors committed fraud in approving the loans. The RTC claims that the directors' approval of the challenged loans was *ultra vires* because the loans violated federal and state regulations, primarily relating to the form and approach of the appraisals used to support the loan applications.

The RTC claims that the directors approved the loans after state and federal regulatory agencies had issued Reports of Examination ("ROE's") that criticized certain loan underwriting practices at Commonwealth, in-

cluding the use of inadequate or defective appraisals. The RTC alleges that in January 1983, the FHLBB issued an ROE pointing out several past regulatory violations, including some inadequate acquisition appraisals and violation of loan to one borrower regulations. Similar problems were noted in the FHLBB's January 1984 ROE. In June 1984, the Board issued a formal response, stating in part that Commonwealth had set up strict criteria to meet the appraisal requirements of the regulations. The RTC alleges that in spite of this assurance, the Board failed to implement policies and procedures to prevent recurring problems. "The defendants committed *ultra vires* acts by ignoring warnings from FHLBB and TSLD, by failing to put into place proper review and lending procedures, and by ratifying loans that did not comply with state and federal regulations and Commonwealth's Bylaws." (Amended Complaint, ¶ 163).

Defendants urge that without allegations of actual knowledge of, or participation in, the specific acts that are claimed to be illegal, the directors' conduct may be negligent, but it is not *ultra vires*. The RTC does not appear to claim that the directors had actual knowledge at the time they approved the specific loans that the appraisals did not meet state or federal regulations or that the loans otherwise violated lending requirements.

Instead, the RTC claims that the ROE's put the directors on notice of regulatory violations in prior loans resulting from poor loan underwriting practices. Because the directors approved loans in the past that did not comply with lending regulations, and because the lending practices that caused the regulatory violations were not changed, the loans the directors continued to approve had the same regulatory defects. Such approvals were therefore *ultra vires*, and the directors can be held personally liable for the resulting losses.

The RTC's case against the outside directors is a mixture of claims of imprudent lending and claims that federal and state regulations governing loans were violated. The allegations of "illegal" aspects in loans that were approved include the following:

1. Commonwealth provided 100% of the financing on "high-risk" loans, in violation of 12 C.F.R. § 563.17(a) (1984);

2. Commonwealth did not properly analyze the financial statements of the borrowers, in violation of 12 C.F.R. § 563.17(c)(1)(iv) (1984) and 563.17–1(c) (1984);

3. Commonwealth used appraisals that failed to conform to the requirements of FHLBB Memorandum R–41b, by, for example, failing to provide discounts to reflect development and absorption periods; using comparables that were in different markets or otherwise dissimilar from the collateral; relying on appraisals obtained by the borrower; relying on "overly optimistic appraisals"; or failing to obtain any appraisal prior to approval, in violation of 12 C.F.R. §§ 545.32 and 563.17–1(c)(1)(iii) (1984), and/or Tex. Sav. & Loan Dept. R, 7 Tex.Admin.Code §§ 65.-17(a)(11) (1985);

4. Commonwealth failed to obtain formal feasibility/marketing studies before making certain loans, in violation of 12 C.F.R. § 545.-32(d) (1984);

5. Commonwealth failed properly to monitor the disbursement of funds under certain loans, in violation of 12 C.F.R. § 563.17–1(c)(1)(vi) and Tex. Sav. & Loan Dept. R., 7 Tex.Admin.Code § 65.7(3) (1984). (Amended Complaint, ¶ 162).

The RTC alleges that by approving loans that Commonwealth employees brought to the Board that violated these and similar state and federal rules, or that were simply imprudent, the directors committed *ultra vires* acts that are outside the business judgment rule.

### a. *The Business Judgment Rule in Texas*

In *Gearhart Industries, Inc. v. Smith International, Inc., supra,* the Fifth Circuit examined the development of the business judgment rule in Texas:

Few Texas cases discuss the issues of a director's standard of care, negligent mismanagement, and business judgment. An early case, *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846 (1889), set the standard

for judicial intervention in cases involving these issues:

> [I]f the acts or things are or may be that which the majority of the company have a right to do, or if they are within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved, these would not constitute such a breach of duty, however unwise or inexpedient such acts might be, as would authorize interference by the court at the suit of a shareholder.

*Id.* at 622, 11 S.W. at 849.... *Texas courts to this day will not impose liability upon a non-interested corporate director unless the challenged action is ultra vires or tainted by fraud* .... Such is the business judgment rule in Texas.

*Id.* at 721 (emphasis added; citations omitted).

■ The Texas business judgment rule continues to be a viable part of Texas jurisprudence that furthers the public policy of encouraging citizens to serve as corporate directors by immunizing them from acts and omissions that in hindsight proved to be wrong, as long as the directors were not personally interested in the transaction or did not act fraudulently or contrary to their lawful authority. *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846 (1889). Under this rule, the negligence of directors does not constitute a breach of duty if the acts of the directors were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved...." 11 S.W. at 849. *See also, Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 616–617 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Zauber v. Murray Savings Ass'n,* 591 S.W.2d 932, 936 (Tex.Civ.App.—Dallas 1979), writ ref'd n.r.e., 601 S.W.2d 940 (Tex.1980). *Quilliam v. Hebbronville Utilities, Inc.,* 241 S.W.2d 225, 228 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.).

The genesis of the business judgment rule in Texas is the Supreme Court's decision in *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846 (1889). There the district court sustained the defendants' general demurrer to plaintiff's petition, and the Supreme Court affirmed. Although the Court's opinion is not as precise as it could have been, it is clear that the Court, after deciding to treat the case as a shareholder's derivative action, concluded that the negligence of a director, no matter how unwise or imprudent, does not constitute a breach of duty if the acts of the director were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved...." 11 S.W. at 849. The Court stated as follows:

> The breach of duty or conduct of officers and directors which would authorize, in a proper case, the court's interference in suits of this character is that which is characterized by *ultra vires,* fraudulent, and injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless.
> *Id.*

Later Texas opinions have recognized and applied this rule. *E.g., Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 616–617 (Tex.App.—Waco 1986, writ ref'd n.r.e.,); *Zauber v. Murray Savings Ass'n,* 591 S.W.2d 932, 936 (Tex.Civ.App.—Dallas 1979), writ ref'd n.r.e., 601 S.W.2d 940 (Tex.1980); *Gearhart Industries, Inc. v. Smith International, Inc.,* 741 F.2d 707, 721 (5th Cir.1984).

■ The business judgment rule as adopted and applied by Texas courts is not merely a defense to a claim of negligence or breach of fiduciary duty against a corporate director. It is a rule of substantive law that requires a plaintiff seeking damages on behalf of a corporation against its disinterested directors to plead and prove (1) that the conduct of the directors complained of was outside the exercise of judgment and discretion the rule is meant to protect, or (2) that the directors had a personal interest in the transactions complained of. As defendants point out, with the benefit of hindsight, the FDIC or a disgruntled shareholder could almost always allege one or more acts of negligence by bank directors in approving a

bad loan. Had the directors obtained better or more current appraisals, more or better security for the loan, and had the bank better monitored the payment history of the loan and subsequent changes in the creditworthiness of the borrower, almost any loan could have been made more secure, or the loss to the bank reduced. The business judgment rule protects bank directors from being guarantors on loans made by banks.

The threshold issue before this court is whether plaintiff's allegations that the directors committed *ultra vires* acts is precluded by the Texas business judgment rule.

### b. *Ultra Vires* Acts

■ Texas law defines *ultra vires* acts as follows:

> acts beyond the scope of the powers of a corporation as defined by its charter or the laws of the state of incorporation.

*Gearhart, supra,* 741 F.2d at 719; *Staacke v. Routledge,* 111 Tex. 489, 241 S.W. 994, 998–99 (1922).

The RTC does not cite, and the court has not found, any case in which a disinterested director has been found liable under Texas law for alleged *ultra vires* acts of employees, absent pleadings and proof that the director knew of or took part in the act, even where the act is illegal. To the contrary, in cases such as *Briggs v. Spaulding,* 141 U.S. 132, 149, 11 S.Ct. 924, 930, 35 L.Ed. 662 (1891), and *Fitzpatrick v. FDIC,* 765 F.2d 569, 577 (6th Cir.1985), the fact that the acts involved were illegal did not make the directors liable for the results, absent pleading and proof that the directors knew about the illegal conduct.

Under the business judgment rule, Texas courts have refused to impose personal liability on corporate directors for illegal or *ultra vires* acts of corporate agents unless the directors either participated in the act or had actual knowledge of the act. *King v. Ballard,* 643 S.W.2d 457 (Tex.App.—Eastland 1982), *rev'd in part on other grounds,* 652 S.W.2d 767 (Tex.1983); *Sutton v. Reagan & Gee,* 405 S.W.2d 828 (Tex.Civ.App—San Antonio 1966, writ ref'd n.r.e.). *See also,* Ube-

laker, Director Liability Under the Business Judgement Rule, 35 S.W.L.J. 775, 782 (1981).

In this case, there is no allegation that the directors knowingly committed illegal acts or acts outside their authority. To the contrary, it was clearly within their authority to ratify or approve loans brought before them by the officers and employees of the thrift. The failure to monitor the acts of the loan officers and other individuals charged with preparing loans and presenting them to the Board for approval is not an *ultra vires* act such that directors may be held personally liable for the results.

■ If a director willfully or through complete inattention ignores obvious signs of employee wrongdoing, the law will "cast the burden of liability upon him." *Graham v. Allis–Chalmers Mfg. Co.,* 188 A.2d 125, 130 (Del.1963); *Briggs v. Spaulding,* 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891). However, the law does not remove the protection of the business judgment rule because such actions are *ultra vires.* Instead, the law removes the protection of the business judgment rule because such actions are either "grossly negligent" or a complete abdication of the directors' responsibility. *Joy v. North,* 692 F.2d 880 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Jewell v. Sal–O–Dent Laboratories, Inc.,* 69 S.W.2d 544 (Tex.Civ.App.—Eastland 1934, writ ref'd).

■ If, as alleged in other counts of the RTC's complaint, defendants abdicated their responsibilities as directors or were grossly negligent in approving loans that did not comply with federal or state regulations, the business judgment rule does not protect them. However, to call such actions *ultra vires,* absent an allegation of actual knowledge of the illegal conduct, distorts the meaning of *ultra vires.* It blurs the already murky distinction between *ultra vires* acts that are outside the business judgment rule and negligent acts that are protected by the rule. *Gearhart,* 741 F.2d at 721; *Cates v. Sparkman,* 11 S.W. at 849.

The defendants' motion to dismiss the allegations of liability due to *ultra vires* acts is therefore granted.

### 3. Count Two: Breach of the Fiduciary Duty of Loyalty

■ The first amended complaint asserted for the first time in Count Two that the director defendants breached a duty of loyalty owing to Commonwealth. The RTC asserts that the directors were "interested" in the loan transactions because they tried "to conceal the institution's financial condition" from the regulators in order to forestall regulatory intervention and maintain control of Commonwealth. (Amended Complaint, paragraph 165). Defendants argue that this allegation does not rise to an allegation of self-interest that would allow a director to be held personally liable in the face of the Texas business judgment rule. The court agrees with the defendants.

In *Gearhart*, the Fifth Circuit held as follows:

> A director is considered "interested" if he or she (1) makes a personal profit from a transaction by dealing with the corporation or usurps a corporate opportunity, ... (2) buys or sells assets of the corporation, ... (3) transacts business in his director's capacity with a second corporation of which he is also a director or significantly financially associated, ... or (4) transacts business in his director's capacity with a family member.

741 F.2d at 719–20. The RTC has not alleged acts by the defendant directors that fit any of these categories. The RTC argues that because the directors were acting—at least in part—to keep their jobs, they were "interested directors." There is no support in Texas law for this position. The only case the RTC cites as authority is limited in its holding to cases in which a hostile takeover threat is pending and the directors' sole or primary reason for acting is to maintain control. The RTC's factual and legal allegations do not fit this authority. *See A. Copeland Enterprises, Inc. v. Guste*, 706 F.Supp. 1283, 1290 (W.D.Tex.1989); *Johnson v. Trueblood*, 629 F.2d 287, 292–93 (3rd Cir.1980); *Cheff v. Mathes*, 199 A.2d 548, 554 (Del.1964).

The allegations that the defendants are liable for a breach of a duty of loyalty due to a desire to "entrench" themselves are therefore dismissed.

### 4. Count Three: Federal and State Common Law Grossly Negligent Breaches of Directors' Duty of Care

■ The seminal Texas case of *Cates v. Sparkman, supra,* 73 Tex. 619, 11 S.W. 846 (1889), does not expressly use the term "gross negligence." The court has not found any Texas or Fifth Circuit cases directly addressing whether the Texas business judgment rule precludes a cause of action for gross negligence. However, this court agrees with Judge Lake's opinion in *FDIC v. Brown,* 812 F.Supp. 722 (S.D.Tex.1992), that *Cates v. Sparkman* can be fairly interpreted as exempting gross negligence on the part of a director from the Texas business judgment rule. In *Cates,* the Court stated that "injurious practices, abuse of power, and oppression on the part of the company or its controlling agency clearly subversive to the rights of the minority, or a shareholder" are not protected by the rule. 11 S.W. at 849. The business judgment rule does not exempt this type of conduct, including grossly negligent conduct by a director, from examination by hindsight. Texas law defines gross negligence to mean a total or "entire want of care." *See, e.g., Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981).

In *Jewell v. Sal–O–Dent Laboratories, Inc.,* 69 S.W.2d 544, 546 (Tex.Civ.App.—Eastland 1934, writ ref'd), the court, although speaking in the context of conduct that would justify appointment of a receiver, held that the plaintiffs had not justified such action because they had not alleged "usurpation, fraud or gross negligence on the part of the directors." In *Jewell,* the court aligned with *ultra vires* and fraudulent conduct (which are both outside the scope of the business judgment rule) what it characterized as "reckless mismanagement." The court in *Jewell* contrasted those three types of corporate malfeasance with mistakes of judgment, which would not authorize appointment of a receiver, and which are protected by the business judgment rule. "There is nothing in the acts charged indicating reckless mismanagement, or that the acts were not done, or authorized, in an honest exercise of the judgment of the board of

directors, and in the interest of the corporation." *Jewell*, 69 S.W.2d at 546.

The business judgment rule in Texas is a broad one. However, its breadth is dictated by its purpose: to protect directors from liability for decisions "within the exercise of their discretion and judgment in the development or prosecution of the enterprise...." *Gearhart, supra*, 741 F.2d at 721. A total want of care is, like fraud, abdication of duty, and *ultra vires* acts, outside the scope of judgment and discretion that the business judgment rule protects.

The Texas business judgment rule therefore does not preclude the RTC from asserting claims against the outside directors based on allegations that the defendants were grossly negligent. The standard of care to be applied is that defined by Texas law, not by a federal common law. *FDIC v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992).

### 5. Count Four: Gross Negligence Under 12 U.S.C. sec. 1821(k)

Section 1821(k), which imposes liability on officers and directors of certain institutions for gross negligence, became effective on August 9, 1989. The RTC seeks here to apply it to conduct by the directors that occurred before its enactment. The court holds that such retroactive application of sec. 1821(k) would be "manifestly unjust" because that section changed the substantive law. The authorities are clear that statutes affecting substantive rights should be given prospective effect only. *See Belser v. St. Paul Fire & Marine Ins. Co.*, 965 F.2d 5, 8–9 (5th Cir.1992); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Plaintiff's claim for recovery under sec. 1821(k) is therefore dismissed.

### 6. Counts Five and Six: Federal and State Common Law Negligence and Negligence *Per Se*/Statutory Violations

This court's recognition of the Texas business judgment rule precludes the RTC's claims for simple negligence in counts five

and six, except insofar as the allegations assert an abdication of duties as directors.

The FDIC's argument that the recent opinion in *FDIC v. Wheat*, 970 F.2d 124 (5th Cir.1992), establishes that the business judgment rule does not preclude an action for negligence against disinterested directors, is unpersuasive. In *Wheat*, the Fifth Circuit affirmed a jury verdict in favor of FDIC against a director of a state-chartered bank for breach of fiduciary duty in connection with his approval of an inadequately secured loan. The court approved a jury instruction that characterized the business judgment rule as a defense to negligence and breach of fiduciary duty claims. Among other things, the instruction approved by the Fifth Circuit stated:

> A director or officer of a bank shall not be held liable for an honest mistake of judgment if he acted with due care, in good faith, and in furtherance of a rational business purpose.

*Wheat* is distinguishable from this case in that the director found liable in *Wheat* had a ·personal interest in the transaction for which he was found liable; the defendant did not argue on appeal that he did not breach his duty of care or good faith because the business judgment rule precluded liability for negligence under Texas law; and in *Wheat*, the business judgment rule was discussed only in terms of whether the jury charge was correct, not whether FDIC's allegations stated a claim. Moreover, to accept the FDIC's argument would mean that the Fifth Circuit violated its long-standing rule that one panel cannot overrule the decision of a prior panel. *E.g.*, *Ford v. United States*, 618 F.2d 357, 361 (5th Cir.1980). This court is not persuaded by FDIC's argument as to the scope of *Wheat*, which would require the court to conclude that the Fifth Circuit intended *Wheat* to overrule *Gearhart sub silentio*.

This court also agrees with Judge Lake's ruling in *FDIC v. Brown, supra*, that the Texas business judgment rule does not protect a director if he abdicated his responsibility and failed to exercise his judgment as a director. As the Second Circuit has stated:

Whatever its merit, however, the business judgment rule extends only as far as the reasons which justify its existence. Thus, it does not apply in cases, *e.g.*, in which the corporate decision lacks a business purpose, is tainted by a conflict of interest, is *so egregious as to amount to a no-win decision*, or results from an obvious and prolonged failure to exercise oversight or supervision. Other examples may occur.

*Joy v. North,* 692 F.2d 880, 886 (2d Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Other courts have also concluded that directors who "abdicate their managerial responsibilities" are not entitled to the business judgment rule's protection from liability. *See, e.g., Rabkin v. Philip A. Hunt Chemical Corp.,* 13 Del.J.Corp.L. 1216, 1217, 1987 WL 28436 (Del.Ch.1987). The RTC has alleged the type of "prolonged failure to exercise oversight or supervision" that falls outside the business judgment rule as a failure to exercise any judgment.

The RTC's claims for simple negligence, not founded in the directors' alleged abdication of their duties, are dismissed.

### 7. Count Seven: Breach of Contract

The RTC alleges that the directors' purported failure to exercise due care breached an "implied contract" between the defendants and Commonwealth. This claim is precluded by the Fifth Circuit's opinion in *FDIC v. Ernst & Young, supra,* 967 F.2d 166, which held that an alleged breach of a common law duty to exercise due care does not give rise to a cause of action for breach of contract. *Ernst & Young,* 967 F.2d at 172. Defendants' motion to dismiss is granted as to the breach of implied contract claim. Under Rule 12(e), the court orders the RTC to replead within 30 days to allege with specificity the contractual duty allegedly breached by defendants, the contract and contract language alleged to create that duty; how that duty was breached; how that duty is separate from the breach of a common law duty to exercise due care; when and how that duty first damaged Commonwealth; the amount of damages; and how the amount was calculated.

### 8. Count Eight: Breach of Controlling Shareholders' Fiduciary Duty

The RTC claims a right to recover for the defendant directors' alleged breach of their duties as "controlling shareholders" of Commonwealth. The RTC has not specified that the defendants took actions in their capacity as shareholders as opposed to their capacity as directors. Under Rule 12(e), the court orders the RTC to replead within 30 days to allege with specificity the acts by the defendants as controlling shareholders, separate from the acts as directors, that were a purported breach of duty and that caused damages, when and how that duty first damaged Commonwealth, the amount of damages, and how the amount of damages were calculated.

### 9. Statute of Limitations

■ The newly pleaded transactions in the RTC's first amended complaint, the Richey Point, Inc. loan, the Bridgewater Landing loan, and the Craig Hall/Resource Savings transaction, were not raised within three years of the date the government assumed control of the institution, on March 8, 1992. 12 U.S.C. § 1821(d)(14). These claims were not raised until the amended complaint was filed on August 21, 1992. Defendants assert that the claims relating to the recently challenged loans are barred by the statute of limitations.

The RTC argues that Fed.Rule Civ.P. 15(c)(2) allows these claims because they relate back to the date of the filing of the original complaint. A claim can relate back only if "there [is] a factual nexus between the amendment and the original complaint." *Tischler v. Baltimore Bancorp,* 801 F.Supp. 1493, 1497 (D.Md.1992), *quoting Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983) (citations omitted), aff'd, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

The RTC argues that because these claims as to the new loans are asserted as part of a grand plan to recoup Commonwealth's losses, the claims should be allowed. That argument does not promote the policy of limiting Rule 15 to claims that are factually related to the original complaint, so that the defendants will not be prejudiced from lack of notice of

the new claim. As the Fifth Circuit has stated: "when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back." *Holmes v. Greyhound Lines, Inc.,* 757 F.2d 1563, 1566 (5th Cir.1985).

The Richey Point, Inc. and Bridgewater Landing loans were not approved until September 1985. The Craig Hall loan was not approved until October 1985. Unlike the seventeen loans made the basis of the original complaint, the three additional loans added to the amended complaint were approved *after* the TSLD Limited Scope Examination made as of March 31, 1985. This report, issued on July 31, 1985, was the first regulatory instruction to increase reserves for real estate owned, and the first report that pointed out a pattern of loans based on deficient appraisals. (Original Complaint, ¶ 29). In October 1985, the FHLBB and Commonwealth entered into a memorandum of understanding that Commonwealth would reduce the number of acquisition, development, and construction loans. (First Amended Complaint, paragraphs 31 and 32). The RTC's own allegations thus make the factual and legal issues involved in the three loans approved in September and October 1985 far different from those involved in the earlier loan approvals. The allegations relating to the new loans therefore do not "relate back" within Rule 15 and are dismissed. *See FDIC v. Bennett,* 898 F.2d 477, 480 (5th Cir.1990).

### Conclusion

Defendants' Renewed Motions to Dismiss (Docket Entries Nos. 42 and 46), are granted as to the RTC's claims that allege *ultra vires* acts; simple negligence; breach of fiduciary duty; breach of implied contract, and 12 U.S.C. § 1821(k). The motions are denied as to the RTC's claims that allege gross negligence or a total abdication of the defendants' duty as directors. Under Rule 12(e), the court orders the RTC to replead within thirty days consistent with this Order.