**RESOLUTION TRUST CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Charles D. ACTON, David Clayton, William F. Courtney, Richard L. Davidson, and John R. Rittenberry, Defendants.**

**Civ. No. 3:92–CV–0624–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1994.

explained that the statute was not intended to change,· but merely to clarify, existing law regarding the proper standard of care for officers and directors of insured depository institutions. *See* House Bill 1076, § 2.

Jack M. Englert, Jr., Anthony L. Joseph, Denise S. Maes, Holland & Hart, Denver, CO, Robert L. Schell, Virginia Adair Nelson Hammerle, Hammerle & Couch, Denton, TX, David L. Finney, Resolution Trust Corp., Legal Div., Dallas, TX, for Resolution Trust Corp.

Paul Edward Coggins, William A. Roberts, Patricia Marie King, Meadows Owens Collier Reed Cousins & Blau, Brian Carl Jobe, Wimer & Jobe, Cheryl B. Wattley, Law Office of Cheryl Wattley, Linda Jean Barbour, Law Offices of Linda J. Barbour, Dallas, TX, for Charles D. Acton.

Edward P. Perrin, Jr., Hubert Adair Crouch, III, James C. Carlson, Crouch & Hallett, Dallas, TX, for David Clayton.

Gary Dale Elliston, Eric Duane Wewers, DeHay & Elliston, Dallas, TX, for William F. Courtney.

Edward P. Perrin, Jr., Hubert Adair Crouch, III, James C. Carlson, Crouch & Hallett, Dallas, TX, for Richard L. Davidson.

James E. Lobert, Rohne Hoodenpyle Lobert & Myers, Arlington, TX, for John R. Rittenberry.

John R. Rittenberry, pro se.

Maxel (Bud) Silverberg, pro se.

Maureen Powers, Atty. Gen. of Texas, Finance Div., Austin, TX, for Dan Morales.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the following: Defendants Clayton and Davidson's Motion for Partial Summary Judgment and Brief in Support, filed September 15, 1993; William F. Courtney's Motion for Summary Judgment, filed September 24, 1993; the RTC's Response in Opposition to the Motions for Partial Summary Judgment of Clayton, Davidson, and Courtney, filed October 4, 1993; Defendants Clayton and Davidson's Reply Brief in Support of Motion for Summary Judgment, filed October 18, 1993; and Defendant William F. Courtney's Reply to the RTC's Response in Opposition, filed October 18, 1993.

Also before the Court are Defendants Clayton and Davidson's Motion for Reconsideration and Brief in Support, filed December 29, 1993; Defendants Clayton and Davidson's Motion for Summary Judgment and Brief in Support, filed December 30, 1993; Defendant William F. Courtney's Motion for Reconsideration and Memorandum in Support, filed January 3, 1994; Defendant William F. Courtney's Third Motion for Summary Judgment and Brief in Support, filed January 3, 1994; Defendant Acton's Motion for Summary Judgment and Brief in Support, filed January 4, 1994; the RTC's Response in Opposition to the Directors' Motions for Reconsideration and Motions for Summary

Judgment, filed January 6, 1994; Defendants Clayton and Davidson's Reply Brief in Support of Motions, filed January 13, 1994; and Defendant William F. Courtney's Reply to the RTC's Response to Directors' Motions, filed January 13, 1994.

In addition, the Court has received a Motion to Intervene and Brief in Support from the Attorney General for the State of Texas, filed January 24, 1994.

## I. BACKGROUND

Defendants are former directors of HeritageBanc Savings Association ("HeritageBanc"), a state-chartered, federally insured savings and loan institution based in Duncanville, Texas. On April 5, 1989, the Federal Home Loan Bank Board placed HeritageBanc into conservatorship and appointed the Federal Savings and Loan Corporation ("FSLIC") to be the bank's conservator. On August 9, 1989, the Resolution Trust Corporation ("RTC") succeeded FSLIC as HeritageBanc's conservator. When the bank was placed into receivership on April 27, 1990 by the Office of Thrift Supervision, the RTC was appointed its receiver and became its successor in interest. The RTC in its corporate capacity purchased certain of HeritageBanc's assets, including the claims asserted in this action. *See* First Amended Complaint, filed August 6, 1992 at 2–3.

On April 1, 1992, the Resolution Trust Corporation ("RTC") in its corporate capacity[1] brought this case against five members of HeritageBanc's board of directors. In its First Amended Complaint, the RTC asserts claims against Defendants for breach of fiduciary duty, negligence, and gross negligence. *See* First Amended Complaint ¶¶ 30–41, alleging breach of fiduciary duty; ¶¶ 42–49, alleging negligence; and ¶¶ 50–59, alleging gross negligence.

Defendant Charles Acton ("Acton") was chairman of the board and president of HeritageBanc from 1962 until its conservatorship, and Defendant John Rittenberry ("Rittenberry") was an executive vice-president and director during that time. The other three Defendants were outside directors and held no management positions within the bank. Defendant David Clayton ("Clayton") was an outside director of HeritageBanc from 1977 until at least March 1989. Defendant William F. Courtney ("Courtney") was an outside director of HeritageBanc from 1975 until October 6, 1988; Courtney also served as the bank's outside counsel. Defendant Richard L. Davidson ("Davidson") was an outside director from 1977 until April 5, 1989. *See* Stipulated Facts, Joint Pretrial Order, filed April 5, 1993. The RTC's allegations focus on the operation of HeritageBanc between late 1983 and 1988. RTC's Trial Brief at 2.

The RTC's claims center around Defendants' alleged failure to adequately oversee the actions of Acton, the board chairman and president, and members of his family who held positions at HeritageBanc and its subsidiary, Oak Tree Land Development Company, Inc. ("Oak Tree"). *See* RTC's Supplemental Responses to Courtney's Interrogatories, RTC's January 21, 1993 Response in Opposition, Pl.Exh. 3 at 1–12. In particular, the RTC alleges that Defendants bear ultimate responsibility for their approval of, or failure to object to, a series of imprudent real estate loans. *Id.* at 15–26; Joint Pretrial Order at 2.

Acton's wife, two daughters, and father-in-law were officers of HeritageBanc and/or Oak Tree. RTC's Trial Brief at 2. Acton's two sons-in-law, Patrick McElroy ("McElroy") and Edward Cummings ("Cummings") were active in the operations of HeritageBanc. The RTC asserts that the Acton family dominated the operation of HeritageBanc. *Id.* at 2–3.

Cummings formed Oak Tree, which became a wholly owned subsidiary of HeritageBanc as of January 1, 1984. *Id.* at 3. The RTC maintains that Cummings remained a *de facto* officer of Oak Tree after its acquisition by HeritageBanc, at which time the bank shifted a significant amount of its resources from home lending to the riskier commercial real estate market. *Id.* at 3–4.

---

1. Unless otherwise specified, further references in this opinion to "the RTC" will denote Plaintiff, the RTC in its corporate capacity.

In April of 1984, the Texas Savings and Loan Department required HeritageBanc to reduce its investment in Oak Tree to below the 10% cap within eighteen to twenty-four months. The RTC maintains that, instead of complying, the bank circumvented the regulation through a number of imprudent transactions, which form the basis of the RTC's allegations.[2] *Id.* at 4.

The first of these transactions, the Block A transaction, occurred in mid–1984. Cummings personally owned some tracts in Hollywood Park, a subdivision in which HeritageBanc also owned tracts. *Id.* HeritageBanc sold one tract to Cummings at $0.64 per square foot and financed his purchase with a 100% loan. The Duncanville Planning Commission then revised its plat, combining Cummings' newly acquired tract with other land he owned into a tract known as Block A. Approximately four months after selling its land to Cummings, HeritageBanc bought Block A from him for $6.50 per square foot, and Cummings realized a substantial profit. *Id.* at 4–5.

In the second allegedly imprudent transaction, which occurred in 1985, HeritageBanc provided 100% financing for an individual named Ollie Whittern ("Whittern") to buy two tracts of land, one of which was owned by HeritageBanc and one by Cummings. *Id.* at 5–6. The RTC alleges that this transaction, the Whittern/Turner loan, again facilitated the making of a profit by Cummings, the son-in-law of Defendant Acton. *Id.* at 6.

The RTC's third allegation involves a series of loans to an officer and employee of Oak Tree named Danny Smith ("Smith"), who also personally owned a small constructions company, Danny Smith Construction. In 1985, HeritageBanc loaned approximately $2.8 million dollars to Smith, thereby providing 100% financing for the purchase and development of a tract of land owned by Oak Tree. At the time, Smith was earning $86,-000 per year, and Danny Smith Construction had assets worth only $49,000. HeritageBanc allegedly made representations to

Smith that he would face no liability in the event of default. By 1986, Danny Smith Construction had become insolvent, but HeritageBanc loaned the company $374,000. Subsequent loans of $160,000 and $611,576 were made to Smith. The Danny Smith Construction loans. *Id.* at 6–7.

Finally, a similar transaction was carried out with Chris Escobedo ("Escobedo"), another Oak Tree employee who formed a company called Berkeley Development. HeritageBanc loaned Berkeley Development $4,250,000 to finance the purchase and development of land owned by Oak Tree, allegedly with a commitment to Escobedo of no liability in the event of a default. At the time, Escobedo had an income of $41,960, and Berkeley Development was a start-up company, formed for the purpose of this project. HeritageBanc subsequently loaned another $1,500,000 to Berkeley Development, at a time when its financial statement showed it to be insolvent. *Id.* at 7–8. According to the RTC, the Berkeley Development loans were the fourth set of transactions that arose from the directors' breaches of their responsibilities to HeritageBanc and its depositors. *Id.* at 4, 7–8.

Courtney, Clayton, and Davidson (the "Outside Directors") moved for summary judgment on all claims. *See* Courtney's Motion for Summary Judgment, filed January 4, 1993; Clayton and Davidson Motion for Summary Judgment, filed January 19, 1993. In their motions, they maintained that the business judgment rule, as formulated in Texas, precluded the RTC's claims against them. *Id.* By Order dated March 25, 1993, the Court denied their motions. The Outside Directors then asked the Court to reconsider its denial of their motions for summary judgment. *See* Motions filed March 31, 1993. The Court denied the motions to reconsider in an Order filed July 6, 1993.

On March 3, 1993, Defendant Courtney filed a Motion to Dismiss for Abuse of Discovery, which was substantially adopted by Defendants Clayton and Davidson on March

---

**2.** In addition to the transactions described below, the RTC's Trial Brief, filed March 15, 1993, discusses an additional personal loan to Cummings for $285,000. The RTC has since withdrawn its claims regarding this loan. *See* letter from James Englert, dated May 18, 1993 and filed July 1, 1993.

5, 1993. In an Order filed March 11, 1993, the Court denied these motions.

On January 4, 1993, the RTC filed a Motion to Strike certain of Defendants' affirmative defenses. Defendants Clayton and Davidson filed a joint response on January 25, 1993. Defendant Courtney responded separately on that date, and Defendant Acton responded on February 1, 1993. Defendant Rittenberry did not respond. The Court concluded that the issues posed were more properly decided under a summary judgment standard. By Order filed March 18, 1993, the Court converted the motion to one for partial summary judgment and allowed Defendants extra time to respond. Defendants Clayton and Davidson filed a joint supplemental response on March 29, 1993, which Defendant Acton adopted on the same date. Defendant Courtney filed his own supplemental response on that date. The Court granted the RTC's Motion for Partial Summary Judgment with respect to the following of Defendants' affirmative defenses: statute of limitations and laches; affirmative defenses regarding the pre- and post-conservatorship conduct of federal regulators, including failure to mitigate, comparative or contributory negligence, estoppel, consent or waiver, and the "superior equities" doctrine; and the affirmative defense of federal preemption pursuant to 12 U.S.C. § 1821(k). These defenses were dismissed. See Order, filed July 6, 1993.

Several motions are currently before the Court. The Court notes that Defendant Rittenberry appears *pro se* in this case and has no motions pending. The Outside Directors have filed motions for partial summary judgment regarding allegations of breach of fiduciary duty and negligence. After addressing these motions, the Court will examine the Outside Directors' new motions to reconsider. Then the Court will take up the motions for partial summary judgment regarding the statute of limitations defense, which have been filed by the Outside Directors and by Defendant Acton. Finally, the Court will discuss the Motion to Intervene filed by the Attorney General for the State of Texas.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. See Fed.R.Civ.P. 56. The threshold inquiry, therefore, is "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the nonmovant's case. See *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Once the moving party shows that it is entitled to summary judgment, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (quoting Rule 56(e)); *see also Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195–98 (5th Cir.1986).

In short, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). However, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir. 1990).

### B. Motions for Partial Summary Judgment Regarding Allegations of Breach of Fiduciary Duty and Negligence

In their Motion for Partial Summary Judg-

ment,[3] the Outside Directors note that recent federal district court decisions, including *FDIC v. Brown,* 812 F.Supp. 722, 725–26 (S.D.Tex.1992), have interpreted the Texas business judgment rule to bar claims for ordinary negligence and breach of fiduciary duty against former disinterested directors of failed financial institutions. September 15, 1993 Motion for Partial Summary Judgment at 1. They also assert that a recently enacted Texas statute has codified this interpretation of the Texas business judgment rule. The Outside Directors ask the Court to re-examine the allegations against them in light of the statute, "which provides that gross negligence or intentional misconduct is the only basis for personal liability for the monetary damages sought by [the RTC]." September 15, 1993 Motion for Partial Summary Judgment at 1–2 (citing Tex.Rev.Civ. Stat.Ann. art. 342–410 (West Supp.1994) ("House Bill 1076")).

The Court acknowledges that recent cases such as *Brown* have shed light on the scope of the business judgment rule under Texas common law. Therefore, in addition to the September 15, 1993 Motion, the RTC's October 4, 1993 Response in Opposition, and the October 18, 1993 Replies, the Court will examine material previously submitted by the parties on this topic. The Court will consider the arguments and evidence set forth in the following filings: the RTC's Trial Brief, filed March 15, 1993; Courtney's Motion for Summary Judgment, filed January 4, 1993; Clayton and Davidson Motion for Summary Judgment, filed January 19, 1993; the RTC's Response and Brief in Opposition, filed January 21, 1993; Courtney's Reply, filed February 8, 1993; the Reply of Clayton and Davidson, filed February 8, 1993; the RTC's Supplemental Authority in Opposition, filed February 10, 1993; and Clayton and Davidson's Motion for Reconsideration or, Alternatively, Clarification, filed March 31, 1993.

In its Response in Opposition, the RTC maintains that House Bill 1076 does not ap-

ply to the facts of this case. RTC's October 4, 1993 Response in Opposition at 3–5. The RTC also attacks the constitutionality of the statute in several ways. First, the RTC claims that the statute violates the supremacy clause of the United States Constitution. *Id.* at 5–9. Then the RTC challenges the statute's retroactive effect under both the United States Constitution and the Texas Constitution. *Id.* at 9–15. Finally, the RTC claims that the statute violates the open courts and equal protection provisions of the Texas Constitution. *Id.* at 15–19.

■ In its recent opinion, *FDIC v. Harrington et al.,* 844 F.Supp. 300 (N.D.Tex. 1994), this Court has concluded that Texas law imposes liability only for grossly negligent violations of the duty of care. Because the Court holds that Texas common law requires gross negligence for officer and director liability, the Court need not address the proper application or the constitutionality of House Bill 1076.

■ A review of the relationship between the fiduciary duties owed by officers and directors and the business judgment rule is informative. Officers and directors have three fiduciary duties: the duty of obedience, the duty of loyalty, and the duty of care. *Gearhart Industries, Inc. v. Smith Int'l, Inc.,* 741 F.2d 707, 719 (5th Cir.1984). The duty of obedience forbids ultra vires acts, that is, acts outside the scope of corporate power. *Id.* The duty of loyalty requires that officers and directors act in good faith; this duty forbids them from engaging in "interested" transactions. *Id.* The duty of care requires officers and directors to manage the corporation's affairs with diligence and prudence. *Id.* at 720. The business judgment rule originated in *Cates v. Sparkman,* when the Texas Supreme Court held:

> [The] negligence of a director, no matter how unwise or imprudent, does not constitute a breach of duty if the acts of the

---

**3.** Defendants Clayton and Davidson filed their Motion for Partial Summary Judgment and Brief in Support on September 15, 1993. Defendant Courtney filed a Motion on September 24, 1993, adopting Clayton and Davidson's Motion "for all purposes as Mr. Courtney is entitled to Summary

Judgment on the RTC's claims for ordinary negligence and breach of fiduciary duties...." William F. Courtney's Motion for Summary Judgment at 1. The Court will hereinafter regard Clayton and Davidson's Motion as speaking for all three of the Outside Directors.

director were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved."

*Brown*, 812 F.Supp. at 724 (quoting *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846, 849 (1889)). These definitions illustrate an inherent tension between the duty of care and the protection of the business judgment rule.

■ In *Gearhart*, the Fifth Circuit clarified the relationship as follows: "Texas courts to this day will not impose liability upon a noninterested corporate director unless the challenged action is ultra vires or tainted by fraud." *Gearhart*, 741 F.2d at 721. Most courts have interpreted *Gearhart* as exempting from the protection of the business judgment rule any breach of the duty of care that amounts to gross negligence. *See RTC v. Norris*, 830 F.Supp. 351, 358–59 (S.D.Tex.1993); *Brown*, 812 F.Supp. at 725; *RTC v. Bonner*, 1993 WL 414679 at *3 (S.D.Tex. June 3, 1993). These courts have contended that the business judgment rule also fails to protect officers and directors who abdicate their responsibilities and fail to exercise any judgment. *Norris*, 830 F.Supp. at 359; *Brown*, 812 F.Supp. at 726. As the Second Circuit explained of Connecticut's business judgment rule,

> [T]he business judgment rule extends only as far as the reasons which justify its existence. Thus, it does not apply in cases, e.g., in which the corporate decision lacks a business purpose, is tainted by a conflict of interest, is so egregious as to amount to a no-win decision, or results from an obvious and prolonged failure to exercise oversight or supervision.

*Joy v. North*, 692 F.2d 880, 886 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).[4]

■ The RTC maintains that all its claims against the directors are valid. The RTC cites *Meyers* and *Wheat* for the proposition that the Fifth Circuit has applied Texas law

to hold officers and directors liable for simple negligence. *See* RTC's January 21, 1993 Response in Opposition at 8–20; *Meyers v. Moody*, 693 F.2d 1196 (5th Cir.1982), *reh'g denied*, 701 F.2d 173 (5th Cir.1983), *cert. denied sub nom. Moody v. Meyers*, 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983); *FDIC v. Wheat*, 970 F.2d 124 (5th Cir.1992).

The Court, however, agrees with the analysis of these cases by Judge Lake in the Southern District of Texas, see *Brown*, 812 F.Supp. at 724–25, and finds that they do not provide authority for imposing a simple negligence standard of liability. In *Meyers*, the Fifth Circuit upheld a judgment against an interested director under a number of alternative theories that included negligence, gross negligence, and breach of fiduciary duty. As Judge Lake notes, however, there is no indication that the defendant director ever raised the business judgment rule before the jury was charged. The Fifth Circuit had no occasion to ask whether the district court should have required the plaintiff, upon a timely motion by the defendant director, to overcome the rule by amending its complaint. *Brown*, 812 F.Supp. at 724 (citing *Meyers*).

In *Wheat*, the Circuit upheld a jury verdict for breach of fiduciary duty and negligence against a bank's chairman of the board. 970 F.2d at 124. The Circuit approved jury instructions that included a definition of fiduciary duties owed by directors, as well as a definition of the business judgment rule. Without elaborating on the specific duty of care owed by the director, the Circuit found no reversible error in the jury instructions. *Wheat*, 970 F.2d at 130–31. Although this Court recognizes that *Wheat* is open to divergent interpretations, the Court concludes that the Fifth Circuit did not intend *Wheat* to overrule *Gearhart*. A reading of Wheat that overrules *Gearhart* would violate the Fifth Circuit's long-standing rule that one panel cannot overrule the decision of a prior panel. *Brown*, 812 F.Supp. at 725 (citing *Ford v. United States*, 618 F.2d 357, 361 (5th Cir.

---

4. Texas law defines gross negligence as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911,

920 (Tex.1981) (citing *Missouri Pacific Ry. v. Shuford*, 72 Tex. 165, 10 S.W. 408, 411 (1888)). The Court believes that a director's total abdication of duties falls within this definition of gross negligence.

1980)). In addition, the Court believes *Gearhart* provides the more accurate statement of Texas law regarding officer and director liability.[5]

In general, the Texas business judgment rule restricts the liability of officers and directors to liability for acts of gross negligence, which may include the complete abdication of their responsibilities. Even the RTC seems to concede this point when it notes that, "at a minimum, the Texas business judgment rule allows actions against directors who were grossly negligent or abdicated their responsibilities." RTC's January 21, 1993 Response in Opposition, at 20–23.

■ In their Motion, the Outside Directors cite the following stipulation from the undisputed facts section of the Pretrial Order to show that they were "disinterested" for the purposes of the business judgment rule:

> J. The RTC has not alleged that the Directors acted outside the scope of their duties, failed to regularly attend Board meetings, received any financial gain or benefit from the transactions at issue, usurped any corporate opportunity in connection with the transactions at issue, committed any fraudulent acts, or committed any ultra vires acts. . . ."

Clayton and Davidson's September 15, 1993 Motion for Partial Summary Judgment at 2–3 (citing Joint Pretrial Order at 10–11); *and see* Clayton and Davidson's October 18, 1993 Reply at 2–3. Although the RTC "expressly states that none of [those] issues are relevant to its claims in this case," *id.*, the Court agrees that the stipulation undercuts any innuendo of active participation in wrongdoing and may well establish the "disinterested" status of the Outside Directors. Consequently, the Court sees no bar to the application of the business judgment rule to the Outside Directors.

■ The business judgment rule is not a defense to allegations of fraud, *see Voskamp v. Arnoldy*, 749 S.W.2d 113, 121 (Tex.App.—Houston 1987), but no fraud is alleged in this suit. Neither is the business judgment rule a defense to allegations of self-dealing. *See Brown*, 812 F.Supp. at 723. However, self-dealing is not alleged against any Defendant.[6]

The RTC's pleadings in this case do not materially differentiate between interested and disinterested directors. Breaches of the duty of care and the duty of loyalty are lumped together in blanket allegations that apply equally to each of the five Defendants. *See* First Amended Complaint at ¶¶ 30–41. The Pretrial Order stipulation above acknowledges that no allegations of self-dealing or fraud have been made against the Directors. *See* Stipulation J, Joint Pretrial Order at 10–11. Perhaps most revealing is the RTC's pending Motion in Limine Regarding the Absence of Allegations of Fraud, Ultra Vires Acts, *Improper Personal Profit,* and Other Acts Not at Issue in This Case. RTC's Motion in Limine, filed April 5, 1993 (emphasis added). The fact that the RTC moved the Court to prevent Defendants Acton, Clayton, Courtney, Davidson, and Rittenberry from introducing evidence on issues "with absolutely no relevance," see *id.* at 2, such as improper personal profit, is telling.

For the reasons stated above, the Outside Directors' September 15, 1993 Motions for Partial Summary Judgment are **GRANTED** with respect to the RTC's claims for breach of fiduciary duty and negligence. The RTC's claims of breach of fiduciary duty and negligence are hereby **DISMISSED** with preju-

---

5. The Texas legislature gave added weight to the *Gearhart* standard of liability when it enacted House Bill 1076. The statute explicitly provides that officers and directors may be held liable only for acts of gross negligence. The legislature explained that the statute was not intended to change, but merely to clarify, existing law regarding the proper standard of care for officers and directors of insured depository institutions. *See* House Bill 1076, § 2.

6. The RTC has generally asserted that Acton and his relatives dominated HeritageBanc. *See* First Amended Complaint at ¶ 19; Joint Pretrial Order at 2. Although the RTC's presentation of the case in its trial brief emphasizes the questionable nature of loans made to Acton's relatives, the specific allegations pled against him do not seem to differ from those raised against the clearly "disinterested" directors. *See* RTC's Trial Brief, filed March 15, 1993; *see also* First Amended Complaint at ¶¶ 30–59; Joint Pretrial Order at 18–23.

dice as to Defendants Clayton, Courtney, and Davidson.[7]

### C. Motions for Reconsideration

The Outside Directors move the Court to reconsider the portion of its previous ruling that granted the RTC summary judgment on the affirmative defense of the statute of limitations. *See* July 6, 1993 Order at 5–9. The Outside Directors' Motions for Reconsideration are **GRANTED,** and the portion of the July 6, 1993 Order addressing the statute of limitations defense is reopened.

### D. Motions for Partial Summary Judgment Regarding the Statute of Limitations Defense

█ In cases brought by a government agency such as the RTC, courts apply a two-step limitations analysis. *FDIC v. Howse,* 736 F.Supp. 1437, 1440 (S.D.Tex.1990). In this case, the Court must determine whether the RTC's claims were viable under state law when federal regulators acquired them. The Court must also determine whether the RTC complied with the applicable three-year federal limitations period in bringing suit. *Id.; see also* 12 U.S.C. § 1821(d)(14)(A)(ii).

Addressing the second step of the analysis, the Court notes that the RTC has complied with the federal limitations period for bringing tort claims. This limitation period begins to run either on the date that the institution entered into conservatorship or on the date that the cause of action accrued, whichever is later. *See* 12 U.S.C. § 1821(d)(14)(B). In this case, HeritageBanc's conservatorship began on April 5, 1989, and the RTC filed suit on April 1, 1992, just before the expiration of the three-year federal limitations period.

█ The Court now addresses whether the state law claims were viable under the state limitations period when the federal regulators took over. It is clear that the federal limitations period cannot revive claims that were stale under the state statute of limitations when the federal regulators acquired them. *Randolph v. RTC,* 995 F.2d 611, 619

(5th Cir.1993). The Texas statute of limitations for negligence and breach of fiduciary duty is two years. *See* Tex.Civ.Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp.1994); *FDIC v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993). The same tort limitations period applies to allegations of gross negligence. *See American Centennial Ins. Co. v. Canal Ins. Co.,* 810 S.W.2d 246, 254–55 (Tex.App.— Houston 1991), *aff'd in part, rev'd in part on other grounds,* 843 S.W.2d 480 (Tex.1992); *see also RTC v. Holmes,* 1992 WL 533256, *1 (S.D.Tex.1992) (noting that it is undisputed that causes of action for negligence and gross negligence are governed by two-year statute of limitations). For all the claims presented by the RTC in its First Amended Complaint, the applicable state statute of limitations is two years from when the cause of action accrued.

█ The RTC challenges the conventional understanding that a cause of action accrues when the tort is committed. The RTC argues that "a cause of action does not accrue until the occurrence of the *loss* attributable to the tort." RTC's January 6, 1994 Response in Opposition at 3 (emphasis added). The RTC asserts that "HeritageBanc's losses relating to the transactions involving Danny Smith Construction, Berkeley Development, and Whittern/Turner arose less than two years before the placing of HeritageBanc into conservatorship," and thus that the claims against Defendants were still viable at the time the RTC acquired them. *Id.* For support, the RTC points to the decision in *Randolph,* which explains that both a tortious act and some legal injury are required for a cause of action to accrue. *Randolph,* 995 F.2d at 618–20 (holding that, in the legal malpractice context, "the cause of action does not accrue until the breach of duty causes a legal injury").

However, *Randolph* concerned legal malpractice, a claim distinctly different from the types of negligence alleged here. In the present case, the RTC's allegations of breach of fiduciary duty, negligence, and gross negligence all involve acts that are themselves

---

**7.** Defendants Acton and Rittenberry have not sought summary judgment on this issue. However, at this juncture it appears that at trial neither could be held liable for breach of fiduciary duty or negligence.

legal injuries. At the moment each alleged breach occurred, the corporation would have suffered enough legal injury to trigger the running of the limitations period. *See Fusco v. Johns–Manville Products Corp.,* 643 F.2d 1181, 1183 n. 1 (5th Cir.1981) ("In actions for negligence, the period of limitations begins to run from the commission of the negligent act, not from the date of the ascertainment of damages"); *see also Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967).

In *FDIC v. Dawson,* the Fifth Circuit resolves the matter succinctly under similar facts by adhering to "the longstanding Texas rule that the tort statute of limitations begins to run when the tort is committed, absent a statute to the contrary or fraudulent concealment." *Dawson,* 4 F.3d at 1312 (citing both *Atkins* and *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940)). Thus, the two-year statute of limitations applies in this context, and the period began to run upon the commission of the allegedly tortious acts by Heritage-Banc's Board of Directors.

■■ In its January 4, 1993 Motion to Strike certain of Defendants' affirmative defenses, the RTC asserted that all its claims were live because the running of the state limitations period had been tolled by Texas' adverse domination rule. The Court agreed and granted summary judgment on this point. However, in light of the Fifth Circuit's recent articulation of adverse domination doctrine in *FDIC v. Dawson,* the Court must reverse its earlier decision.

The Fifth Circuit addressed the issue of the statute of limitations in *Dawson.* While many federal district courts have "liberally applied the doctrine in favor of government-appointed receivers when they sue the directors of a failed bank, regardless of the nature of the claims," the Fifth Circuit did not do so in *Dawson:* "We do not believe that Texas courts would extend the 'very narrow doctrine' ... of adverse domination to cases in which the wrongdoing by a majority of the board amounts to mere negligence." *Dawson,* 4 F.3d at 1312 (quoting *FDIC v. Shrader & York,* 991 F.2d 216, 227 (5th Cir.1993)). According to the Fifth Circuit, "[i]f adverse domination theory is not to overthrow the statute of limitations completely in the corporate context, it must be limited to those cases in which the culpable directors have been active participants in wrongdoing or fraud, rather than simply negligent." *Dawson,* 4 F.3d at 1312.

The Fifth Circuit has not directly answered the question of whether gross negligence triggers the adverse domination rule. In *Dawson,* the Fifth Circuit stated that directors must be "more than negligent" for the doctrine of adverse domination to toll the state statute of limitations. However, the Fifth Circuit declined to specify the lower limit of culpability sufficient to invoke the protection of the adverse domination rule: "We need not address the issue of precisely how culpable a majority of directors must be before adverse domination tolling is available, and we accordingly express no opinion on the subject beyond today's holding that mere negligence is not enough." *Dawson,* 4 F.3d 1303 at 1313 n. 4.

The RTC argues that its allegations of gross negligence meet the standard set forth by the Fifth Circuit in *Dawson* because gross negligence is "more than negligent." The RTC attempts to redeem even the earliest occurrences, the Block A transactions, by asserting that gross negligence is sufficient to support the application of adverse domination tolling to these transactions and that genuine issues of fact exist as to whether the directors were grossly negligent in connection with these transactions. RTC's January 6, 1994 Response in Opposition at 3.

The Court disagrees with the RTC's position. The Court finds that gross negligence is a degree of negligence for statute of limitations purposes. It does not amount to the "active participation in wrongdoing or fraud" that the Fifth Circuit required for application of adverse domination tolling. *See Dawson,* 4 F.3d at 1312. Because the state statute of limitations was not tolled, only those claims that were still live under the two-year limitations period when the federal regulators took over HeritageBanc—that is, those torts that occurred after April 5, 1987—may be raised in this suit.

### III. MOTION TO INTERVENE

Because the Court resolved the present motions without addressing the constitutionality of House Bill 1076, the Attorney General's Motion to Intervene is **MOOT** and therefore **DENIED.** *See supra* part II.B.

### IV. CONCLUSION

The Outside Directors' September 15, 1993 Motions for Partial Summary Judgment are **GRANTED** with respect to the RTC's claims for negligence and breach of fiduciary duty. The RTC's claims of breach of fiduciary duty and negligence are hereby **DISMISSED** with prejudice as to Defendants Clayton, Courtney, and Davidson.

The Outside Directors' Motions for Reconsideration of its previous holding regarding the affirmative defense of the statute of limitations are **GRANTED.** The Court holds that the two-year state statute of limitations applies to the RTC's allegations of gross negligence in this case. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp. 1994). The Outside Directors' Motions for Partial Summary Judgment are **GRANTED.** Defendant Acton's Motion for Partial Summary Judgment is likewise **GRANTED.** The Court *sua sponte* **GRANTS** the same relief to Defendant Rittenberry.

SO ORDERED.