**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 94-10375

_____


RESOLUTION TRUST CORPORATION,
in its corporate capacity,

Plaintiff-Appellant,


VERSUS

CHARLES D. ACTON,
DAVID CLAYTON,
WILLIAM F. COURTNEY,
RICHARD L. DAVIDSON and
JOHN R. RITTENBERRY,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(April 4, 1995)

Before SMITH and BARKSDALE, Circuit Judges, and BUCHMEYER, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

Plaintiff, the Resolution Trust Corporation ("RTC"), appeals a summary judgment in favor of defendants, Charles D. Acton, David Clayton, William F. Courtney, Richard L. Davidson, and John R. Rittenberry. Finding no error, we affirm.

---

[*] District Judge of the Northern District of Texas, sitting by designation.

## I.

### A.

Defendants are the former directors of HeritageBanc Savings Association ("HeritageBanc"), a state-chartered, federally-insured savings and loan association based in Duncanville, Texas. In April 1989, HeritageBanc was placed into conservatorship. On August 9, 1989, the RTC succeeded the Federal Savings and Loan Insurance Corporation as HeritageBanc's conservator. The bank was placed into receivership in April 1990 by the Office of Thrift Supervision. The RTC was appointed the receiver and became the bank's successor in interest. The RTC, in its corporate capacity, purchased several of the bank's assets, including the claims at issue in this case.

The claims surround the operation of the bank from 1983 to 1988 ("the relevant time period"). On April 1, 1992, the RTC brought this case against five of HeritageBanc's directors, asserting state claims for breach of fiduciary duty, negligence, and gross negligence.

Acton was the president and chairman of the board of HeritageBanc from 1962 until the conservatorship. Rittenberry was an executive vice-president and director. The three other defendants served as outside directors for at least twelve years, including the relevant time period.

Acton's wife, two daughters, and father-in-law were officers of HeritageBanc and Oak Tree Land Development Company, Inc. ("Oak Tree"), a subsidiary of HeritageBanc. Acton's two sons-in-law,

2

Patrick McElroy and Edward Cummings, were active in the operations of the bank. Cummings also allegedly ran Oak Tree and was the highest paid individual associated with HeritageBanc.

The RTC's claims focus on the defendants' alleged failure adequately to oversee the actions of Acton and the members of his family. Specifically, the RTC alleges that the defendants bear responsibility for the approval of a series of real estate loans that went sour.

Oak Tree was formed in January 1984 as a wholly-owned subsidiary of HeritageBanc. The RTC alleges that Cummings remained a de facto officer of Oak Tree after the acquisition. The RTC also asserts that, at the time of the acquisition, HeritageBanc shifted a large amount of its resources from home lending to the riskier commercial real estate market.

In April 1984, the Texas Savings and Loan Department required HeritageBanc to reduce its investment in Oak Tree to below a 10% cap within 18 to 24 months. The RTC alleges that HeritageBanc circumvented this requirement through a series of transactions that form the basis of the RTC's allegations.

Block A Transaction

Cummings and HeritageBanc owned tracts of land in a subdivision called Hollywood Park. HeritageBanc sold one tract to Cummings at $0.64 per square foot and financed the transaction with a loan. The Duncanville Planning Commission revised the relevant plat and combined Cummings's new tract with other land he owned and

3

called the new land Block A. Four months after the initial sale, HeritageBanc bought Block A from Cummings for $6.50 per square foot.

Whittern/Turner Loans

In 1985, HeritageBanc provided all of the financing for Ollie Whittern to buy two tracts of land, owned by HeritageBanc and the other by Cummings. The RTC alleges that Cummings was intimately involved with the discussions leading up to the deal and signed the contracts of sale for both tracts on behalf of himself and Oak Tree. The RTC alleges that the transaction provided a sizeable profit to Cummings.

Danny Smith Construction Loans

The RTC alleges that a series of loans were made to an officer and employee of Oak Tree named Danny Smith, who personally owned a company called Danny Smith Construction. In 1985, the bank allegedly loaned him $2.8 million for the purchase and development of land owned by Oak Tree. Smith was earning $86,000 a year at the time, and the company was worth approximately $49,000. The bank supposedly represented to Smith that he would not be personally liable in the event of a default. The company became insolvent by 1986, but the company was subsequently loaned $374,000. Later loans of $160,000 and $611,576 were also made to Smith.

## Berkeley Development Loans

The RTC alleges that a transaction almost identical to the Danny Smith loans took place involving Chris Escobedo, an Oak Tree employee, and his company, Berkeley Development. An initial loan of $4,250,000 was made to purchase and develop Oak Tree land. Again, Escobedo apparently was told that he would not face personal liability. At the time of the loan, Escobedo had an income of $41,960, and Berkeley Development was a company formed solely for this transaction. Later, another $1,500,000 was loaned to Berkeley Development, though it was insolvent.

Whittern/Turner, Danny Smith Construction, and Berkeley Development defaulted on the loans. The loss is estimated at $7,000,000. There does not appear to be an allegation that any of the defendants personally profited from the transactions.

### B.

The RTC commenced its suit on April 1, 1992. The RTC filed a motion to strike certain affirmative defenses, including those based upon the statute of limitations. The RTC argued, at that time, that the adverse domination doctrine had tolled any statute of limitations. The court converted the motion to one for partial summary judgment.

On July 9, 1993, the district court granted the RTC's motion and dismissed the affirmative defenses based upon the statute of limitations. By January 4, 1994, all five of the defendants had filed motions for reconsideration of the dismissal of the

limitations defenses in light of <u>FDIC v. Dawson</u>, 4 F.3d 1303 (5th Cir. 1993). The district court reconsidered and reversed its earlier ruling on the defense. <u>RTC v. Acton</u>, 844 F. Supp. 307 (N.D. Tex. 1994).

Because of the court's refusal to toll the statute of limitations in this case, all claims before April 5, 1987, were time barred. The RTC claims that all of the original loan transactions in this case originated before that date.

The RTC filed a report on the impact of the rulings at the direction of the court on February 2, 1994. Clayton and Davidson also filed a statement with the court on that day. The RTC then filed a response. The RTC argued that the limitations ruling made it impossible for it to pursue the post-April 5, 1987, claims, as those transactions are "interrelated" with the pre-April 5, 1987, transactions. As a result, the RTC sought a final judgment on all the claims so that it could pursue this appeal. Defendants maintain that the RTC had $700,000 in claims that emanated from loans made after April 5, 1987, which it now has forfeited. Final judgment was entered dismissing the RTC's claims on the merits on March 15, 1994.

II.

On appeal, the defendants raise a number of preliminary issues that are meritless. According to the RTC, the only issue for this appeal is whether gross negligence is enough to establish adverse domination. Courtney alleges that the RTC has failed to challenge

6

a finding of fact, conclusion of law, or ruling of the district court. The district court obviously concluded, as a legal matter, that the RTC had not established adverse domination. As a result, all of the RTC's claims that were dated prior to April 5, 1987, were dismissed. Courtney's claim is absurd.

Clayton and Davidson ask this court to determine whether the RTC has waived the right to pursue claims dated after April 5, 1987. The RTC may or may not have foregone the pursuit of possible post-April 5, 1987, claims in order to pursue this appeal, but this issue is not properly before us now.

Defendants aver that the RTC failed adequately to plead adverse domination and cannot raise the defense. There is no mention of this argument by the district court. It appears that the defendants are the ones who are now raising the argument for the first time on appeal. In any event, this court has held that a party need not plead adverse domination in its original or amended complaint. See Dawson, 4 F.3d at 1308. Defendants had ample opportunity to present affidavit evidence and brief the issue for the district court. See id.

## III.

We now review the summary judgment on the limitations issue. The RTC's claims are founded on Texas state law. To be validly pursued by the RTC, state law claims must be viable under the applicable state statute of limitations at the time federal regulators take over. Randolph v. RTC, 995 F.2d 611, 619 (5th Cir.

7

1993).  In addition, the RTC must comply with the applicable federal limitations period when bringing suit.  See Dawson, 4 F.3d at 1307; 12 U.S.C. § 1821(d)(14).

The Texas statute of limitations for negligence and breach of fiduciary duty is two years.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).  The same period applies to allegations of gross negligence.  See American Centennial Ins. Co. v. Canal Ins. Co., 810 S.W.2d 246, 255 (Tex. App.))Houston [1st Dist.] 1991), aff'd in part, rev'd in part on other grounds, 843 S.W.2d 480 (Tex. 1992). The applicable state limitations period for all of the state claims in this case is two years.  The conservatorship of HeritageBanc began on April 5, 1989.  The RTC therefore is time-barred from pursuing claims arising from conduct that occurred prior to April 5, 1987, unless limitations is tolled.

This court in Dawson, 4 F.3d at 1310, held that in order for the government to obtain a tolling of limitations under the doctrine of adverse domination, it must prove two things.  First, it must show that a majority of the bank's board was composed of alleged wrongdoers "during the period the [RTC] seeks to toll the statute."  Id.  Whether there exists a genuine issue of fact on this element is not in dispute on this appeal.  Second, the RTC must show that those directors were "more than negligent for the desired tolling period."  Id. at 1313.

The district court found that limitations had not been tolled, because the RTC failed to allege that the directors had been more than negligent.  Acton, 844 F. Supp. at 317.  The court noted that

8

the Dawson panel had refused to state exactly what level of culpability above simple negligence would be sufficient to toll the statute. The RTC argued that allegations of "gross negligence" were enough. The district court, however, found as a matter of law "that gross negligence is a degree of negligence for statute of limitations purposes." Id. As a result, the court decided that summary judgment was proper for defendants on the limitations issue.

IV.

The district court's dismissal of the RTC's claims was based solely upon the resolution of a pure question of law. We now decide whether meeting the gross negligence standard is sufficient to trigger the doctrine of adverse domination under Texas law. While the Dawson court specifically did not decide this issue, we are guided by Dawson.

The level of culpability required to trigger adverse domination is a Texas state law question, though "Texas case law provides little guidance to this court on this issue." Dawson, 4 F.3d at 1311. It is plain that no court in Texas has invoked the adverse domination doctrine based upon the "mere negligence" of a majority of the directors. Id.

The court in Dawson held that the doctrine of adverse domination is "very narrow." Id. at 1312. According to the court:

> If adverse domination theory is not to overthrow the statute of limitations completely in the corporate context, it must be limited to those cases in which the culpable directors have been active participants in

9

wrongdoing or fraud, rather than simply negligent. *Id.* We are given two pieces of relevant information. First, the relevant conduct must be more than "simply negligent," and second, it must amount to active participation in wrongdoing or fraud.

In Burk Royalty v. Walls, 616 S.W.2d 911 (Tex. 1981), the court recounted the history of "gross negligence" in Texas. It defined the standard as

> that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Id.* at 920. In 1987, the Texas Legislature modified the common law definition:

> "Gross negligence" means more than momentary thoughtlessness, inadvertence or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5). According to the Texas Supreme Court, this statutory definition, as compared to the common law definition, "emphasizes that the evidence must 'establish' the defendant's actual conscious indifference, rather than raise the mere belief that conscious indifference might be attributable to a hypothetical reasonable defendant." Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 20 (Tex. 1994) (emphasis added). This definition of gross negligence plainly contains a subjective component.

There is no doubt that gross negligence and simple negligence are separate standards at some level of analysis. Moreover, it is

10

more difficult for a party to establish gross negligence than to show simple negligence because of the subjective component of gross negligence. See Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 326 (Tex. 1993). The Texas Supreme Court, however, has stated that "[n]o exact line can be drawn between negligence and gross negligence." Williams v. Steves Indus., 699 S.W.2d 570, 573 (Tex. 1985).

Thus, while gross negligence certainly is "more" than simple negligence under Texas law, the question is whether it is sufficiently "more" to encompass the requirement that the directors have been active participants in wrongdoing or fraud. We conclude that it is not.

While there is a difference between negligence and gross negligence, it is only a difference of degree and not kind. See Trevino v. Lightning Laydown, Inc., 782 S.W.2d 946, 949 (Tex. App.))Austin, 1990, writ denied). Gross negligence has a subjective component but not an element of intent. Wal-Mart Stores, 868 S.W.2d at 325. The plaintiff must show "actual conscious indifference" rather than purposeful conduct. Id. at 325-26; Moriel, 879 S.W.2d at 20. Gross negligence in Texas is akin to criminal recklessness. Moriel, 879 S.W.2d at 20 n.10.

Dawson requires intentional conduct. The words "active participants in wrongdoing or fraud" are more consistent with intentional conduct than with negligent conduct. The fact that the Dawson court required not only fraudulent conduct or wrongdoing but

11

also "active participation" therein is significant.[1]

Furthermore, the Dawson court was very critical of the way that the doctrine of adverse domination had been "liberally-applied" in other federal courts:

> Federal district courts have liberally applied the doctrine in favor of government-appointed receivers when they sue the directors of a failed bank, regardless of the nature of the claims. The court in Hecht [RTC v. Hecht, 818 F. Supp. 894, 896, 898 (D. Md. 1992)] applied the doctrine in a case in which the RTC alleged breach of fiduciary duty, negligence, gross negligence, and breach of contract, but did not allege any form of self-dealing or fraudulent conduct.

Dawson, 4 F.3d at 1312 (emphasis added). Our court in Dawson rejected this liberal application. Therefore, the implication is that some sort of self-dealing or fraudulent conduct is required and that the level of culpability associated with that conduct is distinct from gross negligence. The self-dealing or fraudulent conduct must be more than negligent or grossly negligent to constitute an active participation in wrongdoing or fraud.

This court's most recent relevant, though not controlling, pronouncement came in RTC v. Seale, 13 F.3d 850 (5th Cir. 1994). In that case, the RTC pled adverse domination and argued gross negligence. The court, however, rejected the argument because the

---

[1] For example, in Texas fraudulent conduct does not necessarily involve an element of intent:

> The essential elements of fraud do not include knowledge of falsity or an intent to deceive except in certain circumstances. Thus, a person who negligently makes a misrepresentation may be liable for fraud, that is assuming other elements to be present, fraud may be found where a person with a duty to know facts that are susceptible of being known makes a false statement with respect to those facts.

Donald P. Duffala, FRAUD AND DECEIT, 41 TEX. JUR. 3D 254 (citations omitted).

12

RTC's proof was no more than conclusory assertions. The court did not state whether gross negligence would suffice, but we did say that the "RTC has not created any fact issues of regulatory violations or fraud, concealment or other illegal activity amounting to more than negligence." Id. at 854-55.

One possible implication from this language is that some sort of intentional conduct, rather than some degree of negligence, is required. Of course, the court also may have understood gross negligence to constitute enough culpability for the doctrine of adverse domination and simply may have felt that the RTC had not created an issue of fact under that standard. Either way, the Seale court's pronouncement does not constitute a holding that binds us on this issue.

Because we conclude that the difference between gross negligence and negligence in Texas is more one of degree rather than kind, and in light of the plain desire of the Dawson court to limit the doctrine of adverse domination to "active participants in wrongdoing or fraud," we reason that an allegation of gross negligence is not enough to toll limitations in this case under the doctrine of adverse domination. The district court, therefore, was correct to dismiss the RTC's claims as time barred under the state statute of limitations.

AFFIRMED.

13